## STATE, EX REL. O'ROURKE, v. DWYER.

By a special act of the legislature, approved April 4th, 1872, commissioners authorized to improve the Bergen Line Road, were empowered to let the work by contract, and to issue certificates of indebtedness, in payment for work done. The act provided that such certificates should bear interest at the rate of seven per cent. The relators contracted for the work by a contract in writing, bearing date October 3d,

1878. The contract stipulated for payment by certificates of indebtedness, payable out of assessments, when collected, bearing interest at the rate of seven per cent. When the act was passed, the legal rate of interest was seven per cent. When the contract with the relators was made, the legal rate of interest had been reduced to six per cent., by the general statute passed February 26th, 1878. *Held*—

1. That the act of 1872, under which this improvement was made, being a special statute, was not repealed by the general statute of 1878, regulating interest.

2. That the contract with the relators for certificates, which should bear interest at the rate of seven per cent. was a legal contract, and that by its terms, the relators were entitled to have certificates issued to them, which should bear interest at that rate, notwithstanding the reduction of the rate of interest on contracts by the act of 1878.

On rule to show cause why a *mandamus* should not issue.

Argued at February Term, 1880, before Justices DEPUE, SCUDDER and KNAPP.

For the relators, *J. W. Vroom.*

*Contra, A. I. Smith.*

The opinion of the court was delivered by

DEPUE, J. The defendants were appointed commissioners for the improvement of the Bergen Line Road, in the county of Hudson, under a special act of the legislature, approved April 4th, 1872. *Pamph. L., p.* 1386. The road proposed to be improved lay part in the township of Union and part in the township of North Bergen. By Section 4, the commissioners were authorized to have the work done by contract, on plans and specifications prepared to exhibit the work to be done, the work to be let on proposals for the same, to the lowest bidder. By Section 5, the commissioners were authorized to issue certificates of indebtedness to contractors, as the work progressed, for two-thirds of the amount done, upon estimates made by their engineer, and at the completion of the work, for the balance. By Section 6 of the supplement of April 9th, 1875, (*Pamph. L., p.* 582,) provision was made for

the means of paying such certificates by assessments on lands benefited, and payment by the townships of the unassessable portion of the expenses incurred.

By Section 5, it was expressly provided that the certificates of indebtedness issued under that section should bear interest at the rate of seven per centum per annum until paid, and should be receivable in payment for assessments laid by the commissioners.

In August, 1878, the commissioners, by public advertisement, solicited proposals for the work, according to certain plans and specifications prepared for that purpose by their engineer. In the plans and specifications so prepared, and which were exhibited to bidders for the work, were contained the following stipulations for payment of the contract price: "Payments will be made once in each month, as the work progresses, based upon an estimate of two-thirds of the amount of work done at the time the estimate is given, on the certificate of the engineer. Two-thirds of the amount retained to be paid in like manner, on the completion and acceptance of the work, and one-half of the balance to be paid six months after, and the remaining one-half twelve months after the date of the final certificate of the engineer. Payments will be made in improvement certificates, payable out of the assessment when collected, or the proceeds of the property when sold. Interest at the rate of seven per cent. will be allowed on all certificates issued, from their date of issue, and on the balance retained, from the date of the final certificate of the engineer."

The relators were successful bidders for the proposed work. Their bid was accepted, and, on the 3d of October, 1878, a contract under seal was executed by the commissioners of the one part, and the relators of the other part. By this contract, the relators covenanted to furnish all the materials and do all the work called for and required in the specifications and shown on the plans, according to said plans and specifications, and upon the terms and conditions, and in the manner and at the times in said specifications set forth and required, for the

sum of $23,520.50. And the said commissioners did cove-
nant and agree to pay the said contract price, "at the time
and in the manner and upon the conditions in said specifica-
tions set forth."

The work was commenced by the relators, under this con-
tract, and an estimate for a proportional part of the contract
price made by the engineer in charge, and such a certificate
thereof was given as, under the specifications, would entitle
relators to a certificate of indebtedness. Thereupon, a dispute
arose as to whether such certificates of indebtedness should
bear interest at the rate of six or at the rate of seven per
cent. per annum; and the object of this proceeding is to settle
that controversy.

This dispute was occasioned by a change in the general law
regulating the rate of interest on contracts, by a statute passed
after the approval of the act under which the commissioners
are acting, and before the contract with the relator was entered
into.

In 1872, the rate of interest upon contracts was regulated
by the acts of March 15th, 1866, which fixed the legal inter-
est at seven per cent. *Pamph. L.*, *p.* 406. By the act of
February 26th, 1878, the legal rate of interest on contracts
was reduced to six per cent. *Pamph. L.*, *p.* 30.

The commissioners might have stipulated, in their contract
with the relators, that the certificates of indebtedness to be
issued under the contract, should bear a less rate of interest
than that mentioned in the act under which the improvement
was made. Naming in a special act, a special rate of interest
on corporation obligations, merely fixes a maximum rate
where the interest is a matter of contract, or is the rate which
shall be payable where the contract is silent. Within that
limit, the authorities may lawfully contract for the rate of
interest which the obligations of the corporation shall bear.
But the commissioners made no contract with the relators for
a reduced rate of interest. They did not even maintain
silence on the subject, which would have left the rate of inter-
est to legal inference or construction. They expressly stipu-

lated in their specifications, which became part of their contract with the relators, for interest on the certificates, which the relators should be entitled to at the rate of seven per cent. The rate of interest payable on the certificates was made a part of the contract as much as any other of its terms, and, from the peculiar method devised for providing the money to pay the certificates, became an important and valuable part of the contract. The contract could only be performed by the delivery of certificates bearing interest at seven per cent. If the contract was legal, it was obligatory in this as in other respects.

The result will depend, therefore, on the question whether the act of 1872, which is the authority under which the commissioners are acting, was repealed by the general statute of 1878, so far as regards the rate of interest to be contracted for by the commissioners, after the act of 1878 became a law. Did the act of 1878 make usurious and illegal, contracts which conform to the provisions of the act of 1872?

The act of 1872 is both special and local; the statute of 1878 is a general statute. Where a general law and a special statute come in conflict, the general law yields to the special, without regard to priority in date, and a special law will not be repealed by a general statute, unless by express words or necessary implication. *State* v. *Clarke*, 1 *Dutcher* 54; *State* v. *Branin*, 3 *Zab.* 484; *State* v. *Minton*, *Id.* 529. The statute of 1866 was substantially re-enacted by being incorporated in the revision of 1874, (*Rev.*, *p.* 519,) and the act of 1878 is a re-enactment of the first section of the revision, *in totidem verbis*, except that " six " is substituted for " seven," in designating the rate of interest, and the repealer is only of so much of the first section of the revision of 1874 as is inconsistent with the new statute.

The act of 1878 contains no repealer of special or local legislation, either in express words or by necessary implication; and, so far as concerns the act of 1872, which is now in question, that act is, upon established rules of construction,

left in full force, and contracts which were legal under its provisions before the act of 1878, are still lawful.

The rule for a *mandamus* should be made absolute, without costs.